IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **POONAM HOSPITALITY d/b/a** § <br> **QUALITY INN & SUITES,** § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> **LEXINGTON INSURANCE COMPANY,** § <br> § <br> Defendant. § | | Civil Action No. **3:21-CV-2209-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Lexington Insurance Company's Motion for Partial Summary Judgment ("Motion") (Doc. 34), filed July 17, 2022. No response in opposition was filed by Plaintiff to the Motion. After considering Defendant's Motion and evidence, the court determines that the Motion (Doc. 34) should be and is hereby **granted**.

### I. Factual and Procedural Background

On July 21, 202, Poonam Hospitality d/b/a Quality Inn & Suites ("Plaintiff" or "Poonam") brought this action involving an insurance coverage dispute in state court against Lexington Insurance Company ("Defendant" or "Lexington"). After the case was removed to federal court, Poonam filed its Amended Complaint ("Complaint") in which it alleges causes of action for breach of contract and breach of the duty of good faith and fair dealing. In addition, Poonam asserts claims against Lexington for alleged violations of the Texas Insurance Code, the Texas Deceptive Trade Practices Act ("DTPA"), and the Texas Prompt Payment Act ("TPPA").

All of Poonam's claims stem from Lexington's handling of an insurance claim that was submitted on October 22, 2019, under insurance policy No. 060437880 (the "Policy") to recover for property damage and economic losses allegedly sustained by commercial property located in

Dallas, Texas. The damages and losses were alleged to have been sustained during a storm system that passed through North Texas on October 20, 2019. On January 8, 2020, after investigating the claim, Lexington made an initial payment of $350,000 to Poonam under the Policy that had a limit of $5,000,000. As a result of further investigation, Lexington concluded that the Property's replacement cost value was $546,928.86. On January 12, 2020, this estimate was sent to Plaintiff. Unhappy with Lexington's estimate, Poonam hired its own adjuster, which arrived at an estimated replacement cost value of $2,446,148.49. Lexington provided this estimate to its own adjuster for consideration. In accordance with its adjuster's recommendation, Lexington made an additional payment to Poonam on March 2, 2021, in the amount of $34,353.27 after receiving a proof of loss signed by Poonam on February 25, 2021.

Other requests by Lexington to Poonam to provide a full and final proof of loss for the property damage and economic losses claimed and supporting documentation as required by the Policy, however, went unanswered between December 2019 and September 2020 before Poonam brought this lawsuit against Lexington on July 21, 2021. On July 17, 2022, Lexington moved for summary judgment on all claims asserted by Plaintiff, except for Plaintiff's claims for breach of contract and alleged TPPA violations. Plaintiff did not file a response to the summary judgment motion, and it did not request an extension of time to respond to the motion or any other relief allowed pursuant to Federal Rule of Civil Procedure 56(d).

## II.     No Response Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

As noted, Plaintiff did not respond to Defendant's Motion. This failure, of course, does not permit a court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). When no response is filed, such failure does permit the court to accept as undisputed the evidence set forth in support of a movant's motion for summary judgment. *Id.* Accordingly, the court accepts Defendant's evidence as undisputed.

### III. Discussion

#### A. Breach of Duty of Good Faith and Fair Dealing

In *Higginbotham v. State Farm Mutual Automobile Insurance Company*, 103 F.3d 456 (5th Cir. 1997), the court explained as follows regarding the law applicable to claims for breach of good faith and fair dealing under Texas common law:

> Under Texas law, there is a duty on the part of the insurer to deal fairly and in good faith with an insured in the processing of claims. *Arnold v. National C[]nty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). A cause of action for breach of the duty of good faith and fair dealing exists when the insurer has no reasonable

> basis for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial. *Id.* In order to sustain such a claim, the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim. *Aranda v. Ins[urance] Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988)[,*overruled on other grounds by Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 433 (Tex. 2012)). The insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim. *State Farm Lloyds Inc. v. Polasek*, 847 S.W.2d 279, 284 (Tex. App.—San Antonio 1992, writ denied). However, insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim. *St. Paul Lloyd's Ins. v. Fong Chun Huang*, 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (citing *Aranda*, 748 S.W.2d at 213). A bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim. *Id.* As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith. *Lyons v. Millers Cas[.] Ins[.],* 866 S.W.2d 597, 600 (Tex.1993).

*Higginbotham*, 103 F.3d at 459. Thus, an insurer breaches its duty of good faith if it denies a claim when its liability has become reasonably clear. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

Likewise, "[a]n insurance company may . . . breach its duty of good faith and fair dealing by failing to reasonably investigate a claim." *Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 897 (5th Cir. 2018) (citation omitted). An insurer, however, "does not have a duty to leave no stone unturned." *Id.* "The scope of the appropriate investigation will vary with the claim's nature and value and the complexity of the factual issues involved." *Simmons*, 963 S.W.2d at 44-45. Further, an insurer does not commit bad faith as a matter of law if it denies coverage following a reasonable investigation of the claim when it relies on experts retained to assist in assessing the claim. *See id.* In *Wells v. Minnesota Life Insurance Company*, the Fifth Circuit noted that some courts have held that "an insurer's reliance upon an expert report, standing alone, will not necessarily shield the carrier if there is evidence that the report was not objectively prepared or the insurer's reliance on

**Memorandum Opinion and Order – Page 5**

the report was unreasonable." *Id.* (citation omitted).  The Fifth Circuit, nevertheless, affirmed summary judgment in favor of the insurer on the plaintiff's bad-faith claim because the medical expert's "opinion was not the only evidence that Minnesota Life had to stand on. In the light of Melton's medical record and the CDC, we hold that Minnesota Life had a reasonable basis for denying Gloria's claim[.]" *Id.*

Lexington contends that Plaintiff's cause of action for breach of duty of good faith and fair dealing under Texas law fails as a matter of law because:

> Plaintiff alleges that Lexington breached the common law duty of good faith and fair dealing by "delaying, denying, or underpaying Plaintiff's claim without any reasonable basis and by failing to conduct a reasonable investigation." Shortly after receiving notice of Plaintiff's claim, Lexington retained Envista and MKA to assist in the adjustment of the claim and relied on their findings throughout the claims adjustment process. As alleged in Plaintiff's First Amended Complaint, Lexington issued an advance payment to Plaintiff totaling $350,000.00. After receiving Plaintiff's estimate of the scope of alleged damages, Lexington requested that MKA revise its estimate. Thereafter, pursuant to Envista's report and MKA's revised estimate, Lexington requested that Plaintiff sign a proof of loss in the amount of $34,353.27 for the additional ACV amount owed. Plaintiff failed to sign the proof of loss until February 25, 2021. Once the proof of loss was signed, the additional $34,353.27 was paid. Further, Plaintiff failed to provide the requested full and final proof of loss. Accordingly, there is no evidence that Lexington engaged in any unreasonable conduct.
>
> Further, Plaintiff asserts that Lexington "breached its duty by unreasonably failing to investigate and pay for covered business interruption loss, and by failing to settle Plaintiff's entire claim . . ." As previously noted, throughout its adjustment of Plaintiff's claim, Lexington made six separate requests for information related to Plaintiff's alleged business income losses. Despite Lexington's efforts over a nine-month period to obtain information related to Plaintiff's business income losses, Plaintiff was unresponsive. At best, Plaintiff supplied Lexington with an estimate of business income losses with no supporting evidence or data. Plaintiff's conclusory allegation that Lexington failed to investigate and pay for business interruption losses is in direct contradiction to Lexington's repeated attempts to determine coverage for this claimed loss. There is no evidence that Lexington engaged in any unreasonable conduct related to Plaintiff's business interruption losses. Based on these facts, Lexington is entitled to summary judgment on Plaintiff's common-law bad-faith cause of action as a matter of law.

Def.'s Summ. J. Br. 9-10 (footnotes omitted).

The court agrees. Plaintiff has failed to come forward with any evidence in response to Defendants' summary judgment motion to establish that Lexington's investigation of its claim was unreasonable. Plaintiff has also failed to point to any evidence to establish that Lexington lacked a reasonable basis for denying or delaying payment of the claim and that Lexington knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim. Lexington is, therefore, entitled to judgment as a matter of law as to Plaintiff's cause of action for breach of duty of good faith and fair dealing under Texas common law.

### B.   Texas Insurance Code and DTPA

Defendant next contends that, because Plaintiff's claim based on alleged breaches of the duty of good faith and fair dealing fails, its claims for alleged violations of the Texas Insurance Code and DTPA also fail. Def.'s Summ. J. Br. 10 & n.54.

Under Texas law, an individual damaged by "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] in the business of insurance" may bring a cause of action under the Insurance Code. Tex. Ins. Code Ann. § 541.151. "The prohibited conduct includes 'failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.'" *Performance Autoplex II Ltd. v. Mid–Continent Cas. Co*., 322 F.3d 847, 860-61 (5th Cir. 2003) (quoting Tex. Ins. Code Ann. § 541.151). A violation of Chapter 541 of the Texas Insurance Code is also a violation of the DTPA. Tex. Bus. & Com. Code § 17.50(a)(4).

As this court has previously explained, "[t]he elements necessary to demonstrate the insurer's breach of the common law duty of good faith and fair dealing must be proved in order to establish a statutory violation under the Insurance Code or the DTPA." *Fowler v. Peoples Benefit*

*Life Ins. Co.*, No. 3:06-CV-1095, 2007 WL 2229053, at *7 (N.D. Tex. Aug. (citing *Higginbotham*, 103 F.3d at 460); Thus, when, as here,

> an insured joins claims under the DTPA and the Texas Insurance Code with a bad faith claim and those DTPA and Insurance Code claims are based on the same theory which underlies the bad faith claim—namely, denial of policy benefits without a reasonable basis—then those DTPA and Insurance Code claims must fail if the bad faith claim fails.

*State Farm Fire & Cas. Co. v. Woods*, 925 F. Supp. 1174, 1180 (E.D. Tex. 1996), *aff'd*, 129 F.3d 607 (5th Cir. 1997) (citing *Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied).

In this case, Plaintiff asserts claims under section 17.50(a)(4) of the DTPA; sections 541.060(a)(1), (a)(2)(A), (a)(3), (a)(4)(A), and (a)(7) of the Texas Insurance Code; and sections 541.061(1)-(3) of the Texas Insurance Code. To the extent Plaintiff's DTPA and Texas Insurance Code claims are based on the same factual allegations as its claim for breach of the common law duty of good faith and fair dealing—that Lexington unreasonably delayed, denied, or underpaid its claim without conducting a reasonable investigation—these claims fail for the same reason that Plaintiff's claim for breach of the common law duty of good faith and fair dealing fails. Moreover, although sections 541.060(a)(1) and 541.061 apply to misrepresentations of an insurance policy, Plaintiff's Complaint alleges only that Lexington unreasonably delayed, denied, or underpaid its claim without conducting a reasonable investigation. Accordingly, Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims under the DTPA and Texas Insurance Code.

## IV.   Conclusion

For the reasons explained, no genuine dispute of material fact exists with respect to Plaintiff's causes of action for breach of the duty of good faith and fair dealing and alleged violations of the Texas Insurance Code and DTPA. Lexington is, therefore, entitled to judgment

as a matter of law as to these claims.  Accordingly, the court **grants** Defendant Lexington Insurance Company's Motion for Partial Summary Judgment  (Doc. 34) and **dismisses with prejudice** these claims.  As a result of this ruling, only Plaintiff's claims for breach of contract and alleged violations of the TPPA remain.  *Now that the claims and issues have been narrowed, the parties should seriously consider whether this action can be resolved or settled between them.*

**It is so ordered** this 27th day of October, 2022.

                                              Sam A. Lindsay
                                              United States District Judge